# EXHIBIT 1

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF WESTCHESTER**

**------------------------------------------------------------------------------X**

BIG APPLE COLLECTIBLES CORP.,

**Index No.: ____________**

**Plaintiffs,**

**Date of Filing: _________**

**-against-**

DARK HELMET LLC and LEE BIARS,

**SUMMONS**

**Defendant.**

**------------------------------------------------------------------------------X**

TO THE ABOVE NAMED DEFENDANTS:

YOU ARE HEREBY SUMMONED to answer the Complaint in this action, and to serve a copy of your Answer, or if the Complaint is not served with this Summons, to serve a Notice of Appearance on the Plaintiff's Attorneys within twenty (20) days after service of this Summons, exclusive of the day of service, where service is made by delivery upon you personally within the State, or within thirty (30) days after completion of service where service is made in any other manner, and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: June 16, 2023
Washingtonville, New York.

Daniel H. Richland, Esq.
Richland & Falkowski, PLLC
5 Fairlawn Drive, Suite 204
Washingtonville, New York 10992
*Attorneys for Plaintiff*

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF WESTCHESTER**

**-----------------------------------------------------------------------------X**

BIG APPLE COLLECTIBLES CORP.,

**Plaintiff,**

**-against-**

DARK HELMET LLC and LEE BIARS

**Defendants.**

**-----------------------------------------------------------------------------X**

**Index No.: ____________**

**Date of Filing: _________**

**COMPLAINT**

Plaintiff BIG APPLE COLLECTIBLES CORP. ("Plaintiff"), by its attorney, Richland & Falkowski, PLLC, complaining of the Defendants, alleges, upon information and belief as follows:

1. Plaintiff is a domestic corporation.

2. Defendant DARK HELMET LLC ("LLC") is a Maryland limited liability company.

3. Defendant LEE BIARS ("Biars") is a natural person residing in Maryland.

**<u>JURISDICTION AND VENUE</u>**

4. This Court has jurisdiction over this matter pursuant to NY CPLR § 302(1).

**<u>FIRST CAUSE OF ACTION</u>**

5. On or about February 19, 2023, Plaintiff and Defendants entered into a Merchandise Purchase Agreement whereby Plaintiff agreed to sell, and Defendant LLC agreed to purchase, 217,000 units of Funko Pop, Figpin, Neca, and other collectible toys that were the merchandise of Seller, for a total price of $605,000.00 ("Contract"). **Exhibit A**.

6. Defendant Biars guaranteed the obligations of Defendant LLC under the Contract. *Id.*

7. Pursuant to the Contract, Defendant LLC was to make payments within 5 days of picking up each load of merchandise from Plaintiff. *Id.* at ¶ 3.3.

8. Defendants paid $60,000.00 towards the Contract, leaving a balance of $545,000.00 due Plaintiff.

9. Defendants then picked up the 217,000 units from Plaintiff's warehouse, located at 8 Westchester Plaza, Elmsford, New York 10523, across several days with the final pickup on March 3, 2023.

10. Defendants did not remit the balance of payment.

11. Pursuant to ¶ 8.1 of the Contract, Defendants were entitled to a ten day cure period for any Purchaser default.

12. On June 1, 2023, Plaintiff sent Defendants a Notice to Cure. **Exhibit B.**

13. Defendants have not cured their default.

14. Plaintiff now prays for a money Judgment against Defendant LLC in the sum of $545,000.00, plus statutory interest from March 8, 2023, costs, fees, and disbursements.

**SECOND CAUSE OF ACTION**

15. Plaintiff restates and realleges all of the allegations in the preceding paragraphs.

16. Defendants have received goods for which they have not paid and their retention constitutes an unjust enrichment.

17. Plaintiff now prays for a money Judgment against Defendant LLC in the sum of $545,000.00, plus statutory interest from March 8, 2023, costs, fees, and disbursements.

**THIRD CAUSE OF ACTION**

18. Plaintiff restates and realleges all of the allegations in the preceding paragraphs.

19. Pursuant to Contract ¶ 8.2, "In the event that Purchaser has not fulfilled its financial obligations under this agreement, Guarantor will personally guarantee payment of the Purchase Price or return of all goods at Purchaser or Guarantor's expense within 30 days of the final pickup."

20. Plaintiff now prays for a money Judgment against Defendant Biars in the sum of $545,000.00, plus statutory interest from March 8, 2023, costs, fees, and disbursements.

**WHEREFORE**, plaintiff prays for:

A. On the first and second causes of action, a money judgment against Defendant LLC in the principal amount of $545,000.00, plus statutory interest from March 8, 2023, costs, fees, and disbursements;

B. On the third cause of action, a money judgment against Defendant Biars in the principal amount of $545,000.00, plus statutory interest from March 8, 2023, costs, fees, and disbursements;

C. For such other and further relief as may be just.

DATED: June 16, 2023
Washingtonville, New York

D. [signature]

Daniel H. Richland, Esq.
Richland & Falkowski, PLLC
5 Fairlawn Drive, Suite 204
Washingtonville, New York 10992
*Attorneys for Plaintiff*

# MERCHANDISE PURCHASE AGREEMENT

THIS MERCHANDISE PURCHASE AGREEMENT (this "Agreement") is made as of this _19th__ day of February 2023 (the "Effective Date"), by and between **BIG APPLE COLLECTIBLES CORP.**, a New York corporation ("Seller"); and **DARK HELMET LLC**, a Maryland limited liability company ("Purchaser") and **Lee Biars** ("Guarantor, and sometimes collectively referred to herein with Seller and Purchaser as the "Parties");.

WHEREAS, Seller currently owns and operates a collectibles retail business, with its principal office located at 8 Westchester Plaza, Suite 140, Elmsford, New York 10523 (the "Business"). Seller currently owns Two Hundred Seventeen Thousand (217,000) units of Funko Pop, Figpin, Neca, and other collectible toys that are merchandise of the Business.

WHEREAS, Purchaser desires to acquire from Seller, and Seller desires to sell and convey to Purchaser, the Two Hundred Seventeen Thousand (217,000) units of Funko Pop, Figpin, Neca, and other collectible toys upon the terms and conditions hereinafter provided.

**NOW, THEREFORE**, for and in consideration of the covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Purchaser agree as follows:

1. RECITALS: The foregoing Recitals constitute a material part of this Agreement and are incorporated herein and made a part of this Agreement.

2. PURCHASE OF MERCHANDISE. Subject to the terms and the conditions set forth in this Agreement, Seller shall sell, convey, and deliver to Purchaser, and Purchaser shall purchase from Seller, Two Hundred Seventeen Thousand (217,000) units of Funko Pop, Figpin, Neca, and other collectible toys (the "Merchandise").

3. PURCHASE PRICE; MANNER OF PAYMENT.

3.1. Purchase Price. The total purchase price (the "Purchase Price") for the Merchandise shall be Two Hundred Ten Thousand Dollars ($605,000.00).

3.2. Manner of Payment. The Purchase Price shall be paid by Purchaser in four (6) installment payments (the "Installment Payment"). The Installment Payments shall be in the amount of One Hundred One Thousand Two Hundred Fifty Dollars ($101,250.00). The Installment Payments shall be wired directly to Seller at the following account:

Routing number: 021000021
Account number: [redacted]
Bank Name: Chase
Company Name: Big Apple Collectibles
Company address: 8 Westchester Plaza, Elmsford, NY 10523

3.3. Time of Installment Payments. Each Installment Payment shall be due and owing within five (days) of each individual Merchandise Pickup and Verification by Purchaser

pursuant to the Merchandise Pickup and Verification Schedule defined in Section 4 herein.

4. MERCHANDISE PICKUP AND VERIFICATION SCHEDULE.

4.1. Merchandise Pickup. Purchaser shall pickup the Merchandise from Seller's warehouse located at 98 Westchester Plaza, Suite 140, Elmsford, New York 10523 (the "Warehouse"). Purchaser shall arrange for trucks to arrive at the Warehouse and pickup and receive a portion or load of the Merchandise. Each time one of Purchaser's designated trucks arrives at the Warehouse and pickups and receives a portion or load of the Merchandise it shall be considered a "Merchandise Pickup" for the purposes of this Agreement. At each Merchandise Pickup, Seller shall provide to Purchaser a detailed bill of lading including each item's description and the quantity of each item.

4.2. Schedule of Merchandise Pickup. There will be a total of Six (6) Merchandise Pickups. The first Merchandise Pickup will occur at a mutually agreeable time and date within 3(3) days of the Effective Date of the this Agreement. The remaining Five (5) Merchandise Pickups will occur at a mutually agreeable time and date subsequent to the first Merchandise Pickup. Notwithstanding anything in this Agreement to the contrary, all Merchandise Pickups will be completed within Sixty (15) days of the Effective Date of this Agreement.

4.3. Verification of Merchandise. Purchaser shall have five (5) days from the date of each individual Merchandise Pickup to inspect and verify the Merchandise received from Seller at each individual Merchandise Pickup. Merchandise shall not be deemed to have been accepted by Purchaser until Purchaser has inspected and verified the Merchandise and determined it to be, in Purchaser's reasonable discretion, in good condition. In the event Purchaser discovers any issues, defects, or missing Merchandise, Purchaser shall immediately notify Seller and Seller shall take reasonable steps to resolve any discovered issues, defects, or missing Merchandise.

5. REPRESENTATIONS AND WARRANTIES OF SELLER. Seller represents and warrants to Purchaser as of the Effective Date as follows:

5.1. Organization and Authority. Seller is a corporation duly organized, validly existing, and in good standing under the laws of the State of New York and has the corporate power and authority to own its property and to operate and conduct the Business. Seller possesses all requisite power and authority, has taken all actions required by its organizational documents and applicable law, and has obtained all necessary consents required, to execute and deliver this Agreement, to perform its obligations hereunder, and to consummate the transactions contemplated in this Agreement. Each person executing this Agreement on behalf of Seller has all requisite power and authority to bind Seller hereto.

5.2. No Conflict. The execution and delivery of this Agreement by Seller and the consummation by Seller of the transactions contemplated hereby will not: (a) violate any judgment, order, injunction, decree, or law to which Seller is subject, or (b) conflict with, result in a breach of, or constitute a default under any lease, contract, or other agreement or instrument to

which Seller is a party or by which Seller may be bound. No provision of any agreement or instrument to which Seller is a party or by which Seller is bound requires the consent or authorization of any other person or entity as a condition precedent to the validity or the carrying out of this Agreement.

5.3. Title to Merchandise. Seller has good and marketable title to the Merchandise, free and clear of all mortgages, pledges, liens, security interests, and encumbrances, except as may be specifically set forth to the contrary herein.

5.4. No Bankruptcy. No bankruptcy, insolvency, reorganization or similar action or proceeding, whether voluntary or involuntary, is pending, or, to Seller's knowledge, threatened, against Seller.

5.5. Other Sales Agreements. Seller has not entered into any other contract to sell the Merchandise or any part thereof which is currently in effect, other than regarding the sale of Inventory in the ordinary course of the Business.

6. REPRESENTATIONS AND WARRANTIES OF PURCHASER. Purchaser represents and warrants to Seller as of the Effective Date as follows:

6.1 Organization. Purchaser is a limited liability company duly organized and validly existing under the laws of the State of Maryland and has the power and authority to purchase and own the Merchandise.

6.2. No Conflict. The execution and delivery of this Agreement by Purchaser and the consummation by Purchaser of the transactions contemplated hereby will not: (a) violate any judgment, order, injunction, decree, or law to which Purchaser is subject, or (b) conflict with, result in a breach of, or constitute a default under any lease, contract, or other agreement or instrument to which Purchaser is a party or by which Purchaser may be bound. No provision of any agreement or instrument to which Purchaser is a party or by which Purchaser is bound requires the consent or authorization of any other person or entity as a condition precedent to the validity or the carrying out of this Agreement.

6.3. No Bankruptcy. No bankruptcy, insolvency, reorganization or similar action or proceeding, whether voluntary or involuntary, is pending, or, to Purchaser's knowledge, threatened, against Purchaser.

7. BULK SALES. The parties hereby waive compliance with the provisions of any bulk sales, bulk transfer, or similar laws of any jurisdiction that may otherwise be applicable with respect to the sale of any or all of the Merchandise to Purchaser (including, without limitation, the provisions of the Bulk Transfer Act, Commercial Law Article Sections 6-101, et. seq., of the Annotated Code of Maryland), except for such laws as pertain to the payment of taxes.

8. DEFAULT.

8.1. Purchaser Default. In the event that Purchaser is in default under this

Agreement and after giving Purchaser ten (10) days' prior written notice to cure said default, Seller shall have any and all rights and remedies available under this Agreement, at law, or in equity, including, without limitation, an action for specific performance. No remedy available to Seller is intended to be exclusive of any other available remedy.

8.2 Purchaser Guarantor. In the event that Purchaser has not fulfilled its financial obligations under this agreement, Guarantor will personally guarantee payment of the Purchase Price or return of all goods at Purchaser or Guarantors expense within 30 days of the final pickup.

8.3. Seller Default. In the event that Seller is in default under this Agreement and after giving Seller ten (10) days' prior written notice to cure said default, Purchaser shall have any and all rights and remedies available under this Agreement, at law, or in equity, including, without limitation, an action for specific performance. No remedy available to Purchaser is intended to be exclusive of any other available remedy. Notwithstanding anything contained in this Agreement to the contrary, if Seller is in default under this Agreement, Purchaser shall not be responsible for payments due and owing under this Agreement that are reasonably valued to the default.

9. SEVERABILITY. In the event that any one or more of the provisions contained in this Agreement are held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability will not affect any other provisions hereof, and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had not been contained herein provided that the parties hereto shall endeavor in good faith to rewrite the affected provision to make it valid and consistent with the intent of the original provision.

10. NOTICES. All notices, requests, demands and other communications required or desired to be given hereunder shall be in writing and shall be deemed to have been properly delivered and received when delivered (or delivery is refused) by hand or reputable overnight courier (such as FedEx) to the addressee, or three (3) days after the date deposited in the United States certified or registered mail, return receipt requested, postage prepaid, addressed to the party to receive such notice as follows:

If to Seller: Big Apple Collectibles Corp.
8 Westchester Plaza
Elmsford, NY 10523
Attn: Marc Ghiron

If to Purchaser: DARK HELMET LLC
3817 Bonnybridge Pl.
Ellicott City, MD 21043
Attn: Lee Biars

Any party may change its notice address by delivery of written notice to the other party in accordance with the provisions of this Section 11.

11. ENTIRE AGREEMENT. This Agreement embodies the entire agreement between the parties hereto with respect to the subject matter hereof and supersedes all prior agreements and undertakings. No party shall be bound by any terms, conditions, statements or representations, oral or written, not herein contained. The parties hereto hereby acknowledge and agree that in executing this Agreement, each such party has not been induced, persuaded, or motivated by any promise or representation made by any other party unless expressly set forth herein. All previous negotiations, statements and preliminary instruments by the parties or their representatives are merged in this Agreement.

12. AMENDMENTS. No waiver, modification, or amendment of any term, condition or provision of this Agreement shall be valid or of any effect unless made in writing and signed by the party to be bound by such waiver, modification, or amendment. Any waiver by any party hereto of any default of the other shall not affect or impair any right arising from any subsequent default.

13. CONTROLLING LAW. This Agreement shall be governed by and construed in accordance with the laws of the State of Maryland without regards to principles of conflicts of laws.

14. SUCCESSORS AND ASSIGNS. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns. No party may assign this Agreement without the prior written consent of the other party.

15. ENFORCEMENT. In the event that any action or proceeding is brought in connection with this Agreement, the nonprevailing party shall pay to the prevailing party, both as determined by the court hearing such action or proceeding, the prevailing party's court costs, reasonable attorneys' fees, and expenses incurred in connection with such action or proceeding.

16. CAPTIONS; INTERPRETATION. The captions used in connection with the Sections and Subsections of this Agreement are for convenience only and will not be deemed to expand or limit the meaning of the language of this Agreement. Words of any gender used in this Agreement will be construed to include any other gender and words in the singular number will be construed to include the plural, and vice versa, unless the context requires otherwise. Each party has had the opportunity to have been represented by counsel in the negotiations and preparation of this Agreement; therefore, this Agreement will be deemed to be drafted by both Seller and Purchaser, and no rule of construction will be invoked respecting the authorship of this Agreement.

17. EXHIBITS. All exhibits, schedules, attachments, annexed instruments and addenda attached hereto and/or referred to herein will be considered a part hereof for all purposes with the same force and effect as if set forth verbatim herein.

18. TIME. Time is important to both Seller and Purchaser in the performance of this Agreement, and both parties have agreed that time is of the essence with respect to any date set out in this Agreement. If the final date of any period which is set out in any section of this

Agreement falls upon a day which is not a business day (being a day on which business is generally transacted by the banks in the State of Maryland), then, and in such event, the time of such period will be extended to the next business day.

19. COUNTERPARTS; DRAFTS NOT AN OFFER. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute but a single instrument. Each party may transmit its signature by facsimile or email (*.pdf or similar) to the other party, and any faxed or email signature and/or faxed or email counterpart of this Agreement shall have the same force and effect as an original. The parties hereto agree that the submission of a draft of this Agreement by one party to another is not intended by either party to be an offer to enter into a legally binding contract with respect to the subject matter of this Agreement. The parties shall be legally bound with respect to the subject matter of this Agreement pursuant to the terms of this Agreement only if and when the parties have been able to negotiate all of the terms and provisions of this Agreement in a manner acceptable to each of the parties in their respective sole and absolute subjective discretion, including without limitation, all of the exhibits and schedules hereto, and each of Seller and Purchaser have fully executed and delivered (or caused the delivery) to each other a counterpart of this Agreement, including without limitation, all exhibits and schedules hereto.

20. NO WAIVER. No failure on the part of a party to exercise any power or right given hereunder or to insist upon strict compliance with any obligations specified herein shall constitute a waiver of such party's right to demand exact compliance with the terms hereof. No delay on the part of a party in the exercise of any power or right hereunder shall operate as a waiver thereof nor shall any single or partial exercise of any power or right preclude other or further exercise thereof or the exercise of any power or right.

21. NO JOINT VENTURE. Nothing contained in this Agreement shall be deemed to constitute any party a partner, joint venturer, or employee of any other party for any purpose.

[SIGNATURES ON FOLLOWING PAGE]

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

**SELLER:**

**BIG APPLE COLLECTIBLES CORP.**

By: [signature]
Name: Marc Ghiron
Title: President

**PURCHASER:**

**DARK HELMET LLC**

By: [signature]
Name: LEE BIARS
Title: PRESIDENT

**Guarantor:**

**Lee Biars**

By: [signature]
Name: LEE BIARS

# RICHLAND & FALKOWSKI, PLLC

ATTORNEYS AT LAW

QUEENS COUNTY OFFICE:
28-07 JACKSON AVE 5TH FL
LONG ISL. CITY, NY 11101

ORANGE COUNTY OFFICE:
5 FAIRLAWN DRIVE, SUITE 204
WASHINGTONVILLE, NY 10992

PHONE: (212) 390-8872
FAX: (212) 390-8873
EMAIL: drichland@rflegal.net

June 1, 2023

Via Federal Express
Dark Helmet LLC
3817 Bonnybridge Pl.
Ellicott City, MD 21043
Attn: Lee Biars

RE: *Breach of the Merchandise Purchase Agreement dated February 19, 2023*

Dear Mr. Biars:

My firm represents Big Apple Collectibles Corp. ("Seller") with respect to that that certain Merchandise Purchase Agreement dated February 19, 2023 ("Contract"). Pursuant to the Contract, Seller agreed to sell, and Dark Helmet LLC ("Purchaser") agreed to purchase, 217,000 units of collectible toys for the sum of $605,000.00. According to my client, Purchaser accepted full delivery of the units but has not remitted the outstanding balance of $545,000.00. Pursuant to § 8.1 of the Contract, notice is hereby given of the Purchaser's default. Purchaser has ten (10) days to cure said default by remitting the balance of $545,000.00 to Seller. In the event payment is not received by June 12, 2023, please be advised that this firm has been authorized to commence suit against Purchaser to recover the balance. If you have any questions, please feel free to contact the undersigned.

Very truly yours,

D. L

Daniel H. Richland, Esq.